# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

SHANNON BROWN )
)
    Plaintiff, )
vs. ) NO. CIV-14-0519-HE
)
LIBERTY LIFE ASSURANCE )
COMPANY OF BOSTON, )
)
    Defendant. )

## ORDER

Plaintiff Shannon Brown worked as an assistant manager for Home Depot, Inc. Through the company, plaintiff participated in a long-term disability plan ("the Plan") administered and insured by defendant Liberty Life Assurance Company of Boston ("Liberty"). On February 23, 2011, plaintiff was involved in a motor vehicle accident that resulted in significant injuries to him and in his treatment by various medical professionals. After expiration of the 90-day elimination period contemplated by the Plan, Liberty began paying plaintiff long-term disability benefits. During this period, and at defendant's direction, Mr. Brown applied for social security disability benefits. The Social Security Administration ("SSA") concluded he was totally disabled.

According to the Plan, Mr. Brown's eligibility for benefits for the first 24 months depended on whether he was able to engage in <u>his own</u> occupation with Home Depot. Thereafter, to continue receiving long-term disability benefits, plaintiff had to show that he

1

was unable to perform the duties of <u>any</u> occupation.[1] Mr. Brown sought benefits beyond the initial 24 month time period, but Liberty denied his application for further benefits on the basis that he was able to work in some occupations. It identified five sedentary jobs which it viewed Mr. Brown as being able to perform. Plaintiff appealed the termination of benefits. After the termination was upheld in defendant's internal review and appeal process, Mr. Brown filed this suit under the Employment Retirement Income Security Act of 1974 ("ERISA"). *See* 29 U.S.C. § 1132(a)(1)(B).

Standard of Review

Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989), states the applicable standard of review in cases contesting a benefit determination under an ERISA plan. "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115. If the ERISA plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan, [the court] review[s] the

---

[1] *As applicable to plaintiff's claim, "disability" or "disabled" means that "...during the Elimination Period and the next 24 months of Disability and Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation [and] thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation." AR 010.*

*"Own Occupation" is defined as "...the Covered Person's occupation that he was performing when his Disability or Partial Disability began..." AR 014.*

*"Any Occupation" is defined as "...any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity." AR 009.*

2

administrator's decision for an abuse of discretion." Murphy v. Deloitte & Touche Group Ins. Plan, 619 F.3d 1151, 1157 (10th Cir.2010) (internal citations omitted). The court's review under the abuse of discretion, or arbitrary and capricious, standard is limited, "...asking only whether the interpretation of the plan 'was reasonable and made in good faith.'"[2] Weber v. GE Group Life Assur. Co., 541 F.3d 1002, 1011 (10th Cir.2008) (quoting Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co., 491 F.3d 1180, 1189 (10th Cir.2007)). *See* Cardoza v. United of Omaha Life Ins. Co., 708 F.3d 1196, 1201–02 (10th Cir.2013) ("Certain indicia of an arbitrary and capricious denial of benefits include lack of substantial evidence, mistake of law, bad faith, and conflict of interest by the fiduciary.") (internal quotations omitted). Here, the parties agree that the Plan gives the administrator the necessary discretionary authority and that the deferential "arbitrary and capricious" standard of review applies to the court's review.

If the plan administrator which determines benefits eligibility also pays the claims, that conflict of interest is taken into account in determining whether the benefit denial was an abuse of discretion. Where "the entity that administers the plan, such as an employer or an insurance company, both determines whether an employee is eligible for benefits and pays benefits out of its own pocket," a conflict of interest is created by the dual role. Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105, 108 (2008). While "the presence of a dual role conflict

---

[2] *The Tenth Circuit "treat[s] the terms 'arbitrary and capricious' and 'abuse of discretion' as interchangeable in this context." Weber v. GE Group Life Assur. Co., 541 F.3d 1002, 1010 n. 10 (10th Cir.2008) (internal quotations omitted); accord Foster v. PPG Indus., Inc., 693 F.3d 1226, 1231–32 (10th Cir.2012)*

does not alter the level of deference accorded an administrator's decision," the court "must weigh the conflict 'as a factor in determining whether there is an abuse of discretion,' according it more or less weight depending on its seriousness." Murphy, 619 F.3d at 1157 n. 1 (quoting Glenn, 554 U.S. at 115). "[A] conflict of interest affects the outcome at the margin, when [the court] waver[s] between affirmance and reversal." Hancock v. Metropolitan Life Ins. Co., 590 F.3d 1141, 1155 (10th Cir.2009). "A conflict is more important when 'circumstances suggest a higher likelihood that it affected the benefits decision,' but less so when the conflicted party 'has taken active steps to reduce potential bias and to promote accuracy.'" *Id.* (quoting Glenn, 554 U.S. at 117).

Defendant has submitted evidence that it has taken such active steps. Its litigation manager avers that "employees who make claims decisions on behalf of Liberty Life are not evaluated or compensated on the basis of the amount or number of claims paid or denied" and that "Liberty Life in no way discourages its employees from paying claims that are covered and payable under the terms of its policies." Declaration of Paula McGee [Doc. #21] at ¶ 7. She also claims that the efforts made to "separate the claim determination functions from the underwriting/premium functions," including geographical, departmental/managerial, and decisional separation, as well as "management checks" designed to ensure accuracy in the claims process. *Id.* at ¶¶ 9, 10. Plaintiff argues that this declaration cannot be considered because it is not a part of the administrative record.

Although courts are prohibited from "considering material outside the administrative record where the extra-record materials sought to be introduced relate to a claimant's

4

eligibility for benefits," they may nonetheless consider "extra-record materials related to an administrator's dual role conflict of interest." Murphy, 619 F.3d at 1162. The Murphy exception applies here because the existence of a conflict of interest as to Liberty is not disputed, and the referenced evidence relates to that issue.

Discussion

The administrative record indicates that, as a result of the car accident, Mr. Brown suffered multiple orthopedic traumas and was diagnosed with Complex Regional Pain Syndrome (CRPS),[3] which is characterized by severe pain. *Id.* at 631. He underwent numerous medical procedures which resulted in some improvement of his condition over time. The question for present purposes is whether, at the time of the determination of his benefits eligibility under the "any occupation" standard,[4] he was able to perform any occupation. The date of termination of disability benefits was May 23, 2013, and the decision process immediately preceded that date.

Plaintiff contends defendant's determination was arbitrary and capricious for several reasons. He asserts defendant abused its discretion by (1) "cherry-picking" the record, (2) not considering or giving appropriate weight to the SSA disability determination, (3) improperly analyzing plaintiff's vocational capabilities, and (4) having a dual role conflict of interest.

---

[3] *This condition is also known as Reflex Sympathetic Dystrophy (RSD) or causalgia. 8 Attorney's Medical Advisor §74:49.*

[4] *"Any Occupation" is defined as "...any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity." AR 009.*

The court concludes defendant did not "cherry pick" the evidence or otherwise resolve the disputed issues in an arbitrary or capricious manner. The evidence submitted to Liberty was certainly conflicting and there was evidence which would have supported a determination in plaintiff's favor if considered by itself. At least one of his treating physicians (Dr. Brown; not related to plaintiff) continued to hold the opinion that Mr. Brown could not work, and plaintiff's own statement certainly took that position. However, there is no requirement in this context that defendant must defer to plaintiff's treating physician. *See* Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003) (noting that the deference owed to treating physicians in Social Security cases is not applicable). Further, one of plaintiff's physicians (Dr. Kammerlocher), concluded that he could do sedentary work.[5] The record indicates that Liberty obtained review of the medical records by an orthopedic surgeon (Dr. Gause) and later, in connection with the internal appeal, by a physician certified in both physical rehabilitation and pain management (Dr. Lobel). Their conclusions were consistent with plaintiff being able to perform full-time sedentary duties, with some limitations, and supported a determination that plaintiff's pain medications did not render him mentally incapable of working.

The record does not support plaintiff's suggestion that defendant simply ignored the conflicting evidence. Obviously, it reached conclusions unfavorable to plaintiff's position,

---

[5]*Dr. Kammerlocher submitted a Restrictions Form, dated February 20, 2013, which stated plaintiff could "work at a desk job until his next appointment" and could do sedentary work on a full-time basis. AR 414.*

but there is ample indication that defendant's reviewing physicians considered the opinions of others.[6]

Similarly, the record does not support plaintiff's assertion that Liberty failed to take the social security disability determination into account. It is true that Liberty told plaintiff to pursue social security disability and that, by reason of the policies' coverage, it obtained most of the benefit of the disability determination. However, that fact, while relevant to the question of whether defendant acted reasonably, does not by itself show some unreasonable conduct by defendant. The fact that defendant reached a different conclusion as to disability under the Plan/policy definition from that reached by the Social Security Administration, under the standards applicable to that program, does not necessarily show improper conduct.

What the cases do require, in the face of a seemingly inconsistent determination as to social security disability status, is that the differences be addressed and reconciled in some fashion. *See* Glenn, 554 U.S. at 118 (taking issue with the insurer *ignoring* the SSA's finding in reaching its own contradictory conclusion); Holcomb v. Met. Life. Ins. Co., 615 F.3d 758, 772-73 (7th Cir. 2010) ("An administrator is not forever bound by a Social Security determination of disability, but an administrator's *failure to consider* the determination in making its own benefit decisions suggests arbitrary decisionmaking.") (citing Glenn, 128 S.Ct. at 2352); Liebel v. Aetna Life Ins. Co., 595 Fed. App'x 755, 764 (10th Cir. 2014)

---

[6]*For example, defendant's Appeals Decision Correspondence [Doc. #13-2] lists all of the evidence contained in the file and describes the most relevant evidence, including the evidence plaintiff claims defendant ignored such as his and Dr. Brown's letters. AR 103-04, 106-07.*

(requiring "some *reconciliation*" when the SSA and the administrator apply overlapping disability standards but reach opposite conclusions). Here, defendant did not ignore the SSA determination. The letter denying reconsideration of his application specifically noted the existence of the SSA determination and stated that disability determinations were based on the terms of the policy and were not contingent on any SSA determination. It noted that different standards apply to the weight to be given to the opinions of a treating physician and that various medical and vocational rules applicable in SSA determinations do not apply to a determination under the Plan. December 3, 2013, Letter [AR 110]. This is a sufficient treatment and explanation of the different result. *See* Liebel, 595 Fed. App'x at 764 ("Under the circumstances, the discrepancy between the SSA determination, deferring to old treating opinions, and [an insurer's] later decision, based on a greatly augmented medical record unskewed by special deference to evidence provided by [treating] physicians, does not bespeak arbitrary and capricious conduct under the standard governing our review.").

Plaintiff's concerns based on the nature of the vocational analysis are also unpersuasive. Plaintiff argues that Liberty "failed to specifically address whether Plaintiff's restrictions and limitations would be met by the employment identified by Liberty's in-house vocational specialists, and did not address the physical and/or mental requirements of these jobs, such as sitting or standing requirements and whether these employers would allow Plaintiff to take frequent breaks or rests within his restrictions." Opening Brief [Doc. #17] at 21. However, Mr. Miller's report specifically states "I have been asked by the Appeals Review Consultant to base the Transferable Skills Analysis on an Independent Peer Review

of the records contained in Mr. Brown's claim file performed by Steven M. Lobel, MD," and then proceeds to review Dr. Lobel's restrictions/limitations before beginning its own analysis. AR 113. Moreover, the report clearly states "[t]he following occupations are consistent with Mr. Brown's training, education, experience, and *are within the physical capabilities for work outlined above*." AR 114 (emphasis added). The emphasized phrase plainly references the restrictions and limitations set out by Dr. Lobel.

As noted above, the existence of a conflict of interest between Liberty's role as administrator and its role as the insurer is a consideration which may tip the scales where the other factors are reasonably balanced or where, under the particular circumstances, it suggests an abuse of discretion. Here, in light of the substantial evidence supporting the conclusion reached by defendant, including the substantially consistent conclusion of one of plaintiff's own doctors, and the evidence of defendant's efforts to minimize the incentives for bias in its consideration,[7] the court concludes that an abuse of discretion has not been shown notwithstanding the conflict of interest. *See* Brown v. Hartford Life Ins. Co., 428 Fed App'x 817, 821 (10th Cir. 2011) (unpublished) (concluding that "separating the initial claims handler from the appeals specialist, paying a fixed salary to its decision makers without

---

[7]*Plaintiff suggests that Liberty has a history of bad claims processing, citing a number of court cases where its benefits determination has been overturned by the court. Though these cases indicate some claims have been decided incorrectly in the particular case, none of them suggest the sort of "history of biased claims administration" referenced by the Supreme Court. See* Glenn, *554 U.S. at 117 (citing* Langbein *at 1317-21, which details one insurer's "cost containment measures" which systematically pressured claims processing personnel to deny valid claims.)*

9

incentives for denying claims, and separating the financial department from the claims department" are sufficient to minimize the impact of the conflict).

## Conclusion

As noted above, there is evidence in this record which, considered by itself, would support a conclusion contrary to that reached by defendant. However, there is substantial evidence which supports defendant's determination. On this record, and for the reasons set out above, the court cannot conclude that defendant abused its discretion in denying the claims for further (beyond 24 months) disability benefits. The administrator's decision is **AFFIRMED.**

**IT IS SO ORDERED.**

Dated this 11th day of June, 2015.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE